[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
On August 18, 1998, the plaintiff, Attorney Anonymous[1]
commenced the present action against the defendant, Hartford-New Britain Judicial District G.A.s 12, 15, 16 and 17 Grievance Panel ("Grievance Panel") by verified complaint requesting, inter alia, temporary and permanent injunctive relief in connection with a grievance currently pending against him. On that date, the court,Holzberg, J., granted the plaintiff's ex parte request for a temporary restraining order until such time as the Superior Court could address the merits of the plaintiff's request for temporary injunctive relief.
In December, 1998, this court heard oral argument from both counsel with regard to the plaintiff's request for temporary injunctive relief. In connection with that hearing, both parties stipulated to certain facts. In addition, plaintiff filed an affidavit and submitted a transcript of a criminal proceeding of September 11, 1997 in Hartford Superior court. Both parties have also filed briefs in support of their respective positions.
The plaintiff is licensed to practice law in this state and is currently so practicing. In 1996, the plaintiff was arrested and charged with two class B criminal felony offenses. Several preliminary motions in that matter were heard before the court,Maloney, J. On September 11, 1997, the court, Clifford, J., granted the plaintiff's application for accelerated rehabilitation ("AR"), after the state had reduced the charges to one class C and one class D criminal felony offense. The state and the victims did not oppose the application. The plaintiff was placed on two years probation and was ordered to perform 100 hours of community service and make a charitable contribution. Furthermore, the plaintiff was ordered to perform thirty consecutive days of community service from 9:00 a.m. to 5:00 p. m. CT Page 5079 during the first year of probation, and again, during the second year of the probation. Consequently, the plaintiff's criminal case remains pending in the Superior Court until at least September 11, 1999. If the plaintiff successfully completes the AR, a dismissal will occur on or about that date. If he fails to successfully complete same, he is still subject to prosecution on the pending felony charges.
On April 23, 1998, the Hartford-New Britain Judicial District G.A.s 13 and 14 Grievance Panel initiated Grievance Complaint #97-0874 ("Grievance Complaint"), against the plaintiff, although neither the State's Attorney nor any judicial authority or anyone else had filed a complaint against plaintiff with the grievance panel. The Grievance Complaint does not involve a claim of attorney misconduct regarding clients funds. The Grievance Complaint was filed with the Statewide Bar Counsel, who promptly referred the Grievance Complaint to the defendant Grievance Panel.
The plaintiff's counsel contacted the defendant Grievance Panel's counsel and requested that the plaintiff's response under Practice Book § 2-32(a), be stayed until the completion of the probationary period imposed by the Superior court when it granted the plaintiff's AR application, given that the grievance relates directly to the same factual background as the AR matter, and the plaintiff has the right to remain silent until the probationary period is concluded on September 11, 1999. After several continuances over a period of several months, the Grievance Panels counsel requested that the plaintiff respond to the Grievance Complaint and declined to stay the proceedings. This suit then ensued.
As a result of the foregoing, the plaintiff has requested that the court: (1) grant the plaintiff a temporary and permanent injunction enjoining the Grievance Panel from acting upon Grievance Complaint #97-0874 and from issuing a finding of probable cause or, in the alternative, (2) enjoin the Grievance Panel from acting upon Grievance Complaint #97-0874 until after the expiration of the AR period, in mid-September, 1999.
The plaintiff advances three arguments in support of his application for injunctive relief. First, the plaintiff argues that the defendant is precluded from acting upon the Grievance Complaint because the Superior Court, although made aware of the plaintiffs alleged professional misconduct, did not refer the CT Page 5080 matter to the appropriate grievance entity. As such, it claims that Practice Book § 2-32 requires the Grievance Complaint to be dismissed.
Second, the plaintiff claims that the Grievance Complaint must be dismissed pursuant to General Statutes § 51-91 a, because the Superior Court retains exclusive jurisdiction over attorney misconduct. Third, the plaintiff argues that the Grievance Complaint should be stayed until after the criminal charges have been dismissed because until then the plaintiff is entitled to assert his constitutional right against self-incrimination and there is a substantial probability that, in the absence of plaintiff's response to the grievance, he will suffer irreparable harm to his reputation and finances if the defendant proceeds with the Grievance Complaint. For all of the foregoing reasons, the plaintiff argues that he is entitled to the requested injunctive relief.
The defendant argues in opposition to the application for temporary injunctive relief that Practice Book § 2-32 does not mandate the dismissal of the Grievance Complaint, and that the plaintiff's argument on this issue is misplaced. The defendant also claims that General Statutes § 51-91a is inapplicable here because the plaintiff has not been convicted of a felony. Furthermore, the defendant claims that the plaintiff is not required to testify, pursuant to Practice Book § 2-32, in his own defense to the charges contained in the Grievance Complaint at this juncture, and that the plaintiff's potential loss of reputation and financial gain is not a sufficient basis to justify the granting of temporary injunction relief. As such, the defendant argues that the plaintiff's application for temporary injunctive relief must be denied.
"A party seeking injunctive relief has the burden of proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Advest, Inc. v. Wachtel,235 Conn. 559, 562, 668 A.2d 367 (1995); Tomasso Bros., Inc. v.October Twenty-Four, Inc., 230 Conn. 641, 648, 646 A.2d 133
(1994). The court should balance the equities involved and weigh the plaintiff's likelihood of success on the merits in determining if a temporary injunction should issue. WaterburyTeachers Assn. v. Freedom of Information Commission,230 Conn. 441, 446, 645 A.2d 978, (1994). "A prayer for injunctive relief is addressed to the sound discretion of the court and the courts ruling can be reviewed only for the purpose of determining CT Page 5081 whether the decision was based on an erroneous statement of the law or an abuse of discretion." (Internal quotation marks omitted.) Advest, Inc. v. Wachtel, supra, 235 Conn. 562;Hutchinson v. Town of Andover, 49 Conn. App. 781, 784,715 A.2d 831 (1998).
 I. As to Practice Book § 2-32
The plaintiff argues that the Grievance Complaint cannot be pursued because it alleges attorney misconduct that the Superior Court was made aware of in open court, and that the court did not refer the matter to the statewide bar counsel or to the statewide grievance committee. Therefore, pursuant to Practice Book § 2-32
(a)(2)(F), the defendant lacks "jurisdiction" over the plaintiff and the Grievance Complaint must be dismissed. (Pl.'s Reply Mem. pp. 5, 9.) The plaintiff further argues that the cases of Budneyv. Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 560637 (June 9, 1997, Levine, J.) and Katz v. Statewide GrievanceCommittee, Superior Court, judicial district of Hartford-New Brain at Hartford, Docket No. 557186 (November 15, 1996, Maloney, J.), support his contention that the Grievance Complaint must be dismissed.
The defendant, however, argues that pursuant to Practice Book § 2-32(a), the statewide grievance committee may process grievance complaints in accordance with subdivision (1) or (2) of paragraph (a), and therefore, because it chose to process the present Grievance Complaint in accordance with subdivision (1), Practice Book § 2-32(a)(2)(F) is inapplicable. Furthermore, the defendant argues that even if the statewide grievance committee processed the Grievance Complaint in accordance with subdivision (2), dismissal of grievance complaints by the committee is entirely discretionary. Therefore, under either process, it was not mandatory that the Grievance Complaint be dismissed pursuant to Practice Book § 2-32(a)(2)(F).
Additionally, the defendant argues that the cases cited by the plaintiff in support of his argument are readily distinguished on their facts. Specifically, the defendant argues that the Superior Court in this action does not have exclusive jurisdiction over the Grievance Complaint because the court,Clifford, J., in approving the plaintiff's AR application, focused only on the plaintiff s criminal violations, not on any professional misconduct. Thus, the Superior Court never assumed CT Page 5082 exclusive jurisdiction over the attorney misconduct claims; and as such, there can be no potential for conflict between the professional misconduct decisions of the Superior Court and the Grievance Panel.
Practice Book § 2-32(a)[2] plainly provides that within seven days of the receipt of any attorney complaint, the statewide bar counsel "shall review the complaint and process it in accordance with subdivisions (1) or (2) of thissubsection. . . ." (Emphasis added.) Thus, paragraph (a) of Practice Book § 2-32 permits the statewide bar counsel, in his or her own discretion, to process a grievance complaint by forwarding the complaint to the local grievance panel, as was done in the present case or the counsel may refer the complaint to the statewide grievance committee. Grievance complaints forwarded to the local grievance panel, however, pursuant to the express terms of the Practice Book § 2-32(a)(1), are not subject to dismissal under Practice Book § 2-32(a)(2). Therefore, the plaintiff's argument that the Grievance Complaint must be dismissed pursuant to Practice Book § (a)(2)(F) is without merit. Here, the statewide bar counsel chose to forward the Grievance Complaint in this action to the defendant, pursuant to Practice Book § (a)(1), thereby rendering Practice Book § (a)(2)(F) inapplicable.[3]
Further, Practice Book § 2-32(a)(2)(F) deals with "misconduct occurring in a pending superior court . . . action." The available evidence demonstrates that the court was dealing with allegations of criminal conduct which were themselves the cause of the action and necessarily preceded the criminal case. There is no claim that the misconduct in question occurred within the pending criminal case.
Moreover, the cases of Budney v. Statewide GrievanceCommittee, supra, Superior Court, Docket No. 560637 and Katz v.Statewide Grievance Committee, supra, Superior Court, Docket No. 557186, relied upon by plaintiff are readily distinguishable from the present action. In those actions, the trial court was faced squarely by motion with express allegations of attorney professional misconduct occurring during the course of the proceedings pending before the court. The record here does not show that the issue of professional misconduct was raised in the criminal case or even that such court was in a position to determine if professional misconduct had occurred. To the contrary, the transcript of the hearing upon plaintiff's CT Page 5083 application for accelerated rehabilitation demonstrates that the allegations underlying the criminal charges were hotly contested and the court was in no position to determine the truth of those allegations.
"Mr. Santos: First of all, let me say that if this matter had proceeded to trial, it would have been very hotly contested. We emphatically deny the allegations. . . ." (AR hearing trans. Pg 5.)
"Judge Clifford: Well, obviously its not appropriate that I address Attorney [Anonymous] because this is a pretrial motion; it's not an admission of guilt. Obviously there's some disturbing allegations, but it sounds like if it was a trial, it was going to be obviously hotly contested." (AR hearing trans. Pg 6.)
In light of the foregoing, this court finds that the defendant Grievance Panel was not required to dismiss the Grievance Complaint pursuant to Practice Book § 2-32(a)(2)(F).
 II. As to General Statutes § 51-91a
The plaintiff next argues that under these facts the Superior Court retains exclusive jurisdiction over attorney discipline pursuant to General Statutes § 51-91a, and the Grievance Complaint filed against the plaintiff must be dismissed for lack of jurisdiction. (Pl.'s Reply Mem. pp. 10.) The defendant argues that General Statutes § 51-91a is inapplicable because the statute applies only to attorneys who have been convicted of a felony, and the plaintiff has been granted accelerated rehabilitation.
General Statutes § 51-91a provides in relevant part: "Hearing re eligibility to continue practice of law for an attorney convicted of felony. Order Suspension. Appointment of Trustee. (a) After sentencing of an attorney who has been convicted of a felony. . . ." By it's plain terms, § 51-91a applies only after an attorney is sentenced for a felony.
In the present action, the plaintiff was not convicted of a felony; instead, the plaintiff applied for, and was awarded, accelerated rehabilitation. Moreover, if the plaintiff successfully completes his probation, then the criminal charges will be dismissed. Only if the plaintiff fails to do so, and is subsequently convicted of a felony will the statute apply. CT Page 5084
Therefore, General Statutes § 51-91 a is plainly inapplicable to the present circumstances, and the court rejects the plaintiff's argument that the Grievance Complaint must be dismissed at this time.
 III As to Plaintiff's Right Against Self-incrimination and Irreparable Harm
The plaintiff argues that the Grievance Panel should stay any action on the Grievance Complaint until after the plaintiff's probationary period has ended on September 11, 1999, and the criminal charges against the plaintiff have been dismissed. Specifically, the plaintiff argues that because the plaintiff's criminal case is still pending, the plaintiff is entitled to assert his state and federal constitutional rights against self-incrimination.
The plaintiff argues that if the court does not grant the requested injunctive relief he will suffer irreparable harm because in the absence of his reply the Grievance Panel will find probable cause of attorney misconduct. Said finding becomes public pursuant to General Statutes § 51-90f(d) and Practice Book § 2-32(j); and as such, the public finding will generate renewed negative publicity, and almost certainly cause him irreparable financial and professional harm. Thus, the court should grant a stay of any grievance proceedings in order to protect the plaintiff's right against self-incrimination.
The defendant argues that the plaintiff will not be denied his state and federal constitutional right against self-incrimination if the Grievance Panel proceeds. The defendant claims that Practice Book § 2-32(a) gives an attorney the right to respond to a grievance complaint, but that no response is required. Therefore, the plaintiff is not required to waive his constitutional protections.
The defendant also argues that going forward with the grievance process will not cause the plaintiff irreparable injury because "the inconvenience of responding to a grievance complaint or simply following the process is no more injurious in this case than in any grievance [process]." (Def.'s Mem. Opp. p. 4.) Particularly, the defendant states that the examination of an attorneys actions for ethical violations is "a burden which necessarily accompanies the privilege of practicing law." (Def.'s Mem. Opp. p. 4.) CT Page 5085
As indicated above, the party seeking injunctive relief has the burden of proving irreparable harm and a lack of an adequate remedy at law. Advest, Inc. v. Wachtel, supra, 235 Conn. 562. Moreover, a prayer for injunctive relief is addressed to the sound discretion of the court. Hutchinson v. Town of Andover, supra, 49 Conn. App. 784. "In exercising [that] discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) Tomasso Bros.,Inc. v. October Twenty-Four, Inc., supra, 230 Conn. 648. "Although an absolute certainty is not required [that the harm will occur], it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." Woodbridge Carev. Englebrecht Griffin Superior Court, judicial district of New Haven at New Haven, Docket No. 396811 (March 27, 1997, Hodgson, J.); Moore v. Serafin, 163 Conn. 1, 11, 301 A.2d 238 (1972).
In this case, defense counsel concedes that, if plaintiff declines to respond to the grievance complaint, he will recommend that the panel make a finding of probable cause. Upon such a finding issuing, the proceeding will become a matter of public record.
Plaintiff's affidavit makes clear that his criminal proceeding attracted a great deal of media attention, that the negative publicity cost him 50% of his gross revenues and that only 14 months after the granting of the AR did his practice start to recover. If this grievance becomes public, he expects to again suffer a loss of income and reputation.
In short, plaintiff will suffer significant and irreparable harm, without an adequate remedy at law, if the grievance proceedings become public. That, in and of itself, is not sufficient cause to enjoin the panel's proceedings. Every grievance which reaches a public stage may generate negative publicity. But this panel's insistence on proceeding while plaintiff still has two felony charges pending creates a situation where plaintiff's only real chance to defend himself, and attempt to avoid the finding of probable cause with attendant harmful negative publicity, is to respond to the grievance now, in derogation of his constitutional rights against self-incrimination.[4]
CT Page 5086
The plaintiff's right to respond to the grievance complaint is critical. See Practice Book § 2-32(a)(1). For, in all practicality, the response offers the only meaningful opportunity for the respondent to rebut the allegations of the grievance complaint, and try to prevent the grievance panel from finding probable cause exists that professional misconduct has occurred. Such a finding will lead to professionally and economically harmful publicity. But for plaintiff to do so now would waive his state and federal rights against self-incrimination.
"The defendant's right not to testify is rooted in the privilege against self-incrimination under both the federal and state constitutions. The fifth amendment to the United States Constitution provides that no person `shall be compelled in any criminal case to be a witness against himself.' That provision acts as a restraint upon the individual states as well as the federal government under the fourteenth amendment to the United States constitution." (Internal quotation marks omitted.) Statev. Yurch, 229 Conn. 516, 525 n. 5, 641 A.2d 1387 (1994); State v.Vega, 36 Conn. App. 41, 49 n. 6, 646 A.2d 957 (1994).
"Article first, § 8, of the Connecticut constitution affords criminal defendants a similar protection in language at least as broad as its federal counterpart." (Internal quotation marks omitted.) State v. Yurch, supra, 229 Conn. 525 n. 5. "Our state constitution provides that `[n]o person shall be compelled to give evidence against himself. . . ." Conn. Const., art. I, § 8. This constitutional guarantee is a fundamental tenet of our democracy. Its roots go back to the ancient Hebrew law `that no man is to be declared guilty on his own admission. . . .' Mirandav. Arizona, 384 U.S. 436, 458 n. 27, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). The policies supporting the privilege against self-incrimination `point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government — state or federal — must accord to the dignity and integrity of its citizens." (Internal quotation marks omitted.)State v. James, 237 Conn. 390, 439, 678 A.2d 1338 (1996) (Berdon, J., dissenting.)
In this case the court must weigh the very real harm to plaintiff of being forced to choose between his essential constitutional right to not testify while his criminal case is pending and his need to testify to attempt to avoid the probable cause finding in the grievance proceeding, with attendant damaging publicity. That harm must be balanced against the harm CT Page 5087 to the defendant, as an oversight panel, in any further delay of its proceedings.
It is telling to note in this regard that the defendant conceded its usual practice is to not proceed on grievance complaints while criminal cases are pending. Here it decided to proceed because of both the delay and anticipated dismissal of charges resulting from the AR. But a delay of some two years in a criminal case is not extraordinary, given the volume of cases which are handled by a court system with finite resources. And the dismissal of the charges is not certain, as it requires the plaintiff's successful completion of a probation which includes a large amount of community service.
The court also takes note that the conduct at issue here does not involve clients funds and that the complaint was filed by the other grievance panel some 16 months after plaintiff's arrest, and 8 months after his being granted AR. No claim has been made to this court of any professional misconduct by plaintiff in the interim. Further, plaintiff has it in his hands to successfully complete the AR, and eliminate his concern about the need to preserve his constitutional rights in the criminal case, in only five months. The court does not find a further delay in the defendant's proceedings of some five months to be unreasonable under these specific circumstances.
The court has applied the standard test for weighing temporary injunction requests. Balancing the need of the defendant to proceed to the next stage of it's proceedings against the need of the plaintiff to avoid suffering the irreparable harm of either waiving his constitutional rights in connection with a pending felony criminal case or suffering economically harmful public disclosure without the opportunity to first defend himself, the court finds that a temporary injunction should issue. Accordingly, the defendant is hereby enjoined from proceeding further with the subject grievance complaint pending against plaintiff until September 20, 1999.
James T. Graham Superior Court Judge